# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

Case No. 3:18-cr-115-J-34JBT

JAMAAL ABU TALIB HAMEEN
a/k/a Charles Flowers

## ORDER

**THIS CAUSE** is before the Court on Defendant's Legal Notice and Demand for the Suppression, Voiding and or Exclusion of All Physical Written and Recorded Evidence the Prosecution Plans to Use Against 'Affiant' at Trial (Doc. 123; Motion), filed on October 21, 2018. The government filed a response in opposition to the Motion on November 9, 2018. See United States' Response to Defendant's Motion to Suppress Evidence (Doc. 139; Response). In addition, on November 20 and 29, 2018, the Court held an evidentiary hearing on the Motion. See November 20, 2018 Suppression Hearing Transcript (Doc. 196; Nov. 20 Tr.); November 29, 2018 Suppression Hearing Transcript (Doc. 197; Nov. 29 Tr.). Thus, this matter is ripe for review.

On the morning of the first day of the evidentiary hearing, Defendant requested a continuance. Although the Court denied the continuance, the Court did not complete the hearing on November 20, 2018. Instead, the Court heard from the government's witnesses, as well as those witnesses that Defendant had subpoenaed, before recessing close to 6:30 p.m. The Court scheduled the completion of the evidentiary hearing for November 29th, allowing Defendant to conduct additional investigation before presenting his evidence. On November 29, 2018, Defendant again suggested that he was not

prepared to proceed. At that time, Defendant identified several investigative actions he wished for his retained investigator to complete. However, Defendant failed to identify the existence of evidence relevant to the suppression motion that he had been unable to obtain or investigate before the hearing.[1] Nevertheless, if Defendant identifies evidence relevant to the suppression motion that he was unable to present, he may request that the Court re-open the evidence and reconsider its resolution of the Motion. In making this finding, the Court notes that at this point in time, it appears that although there was a video recording of Defendant's arrest, it no longer exists. The Court will address the absence of the video in resolving Defendant's Motion to Dismiss for Prosecutorial Misconduct in Reference to Brady Violation(s) (Doc. 180), filed on November 28, 2018.

## I. Background

On July 18, 2018, a federal grand jury returned an Indictment (Doc. 1) charging Defendant with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The charge stems from Defendant's February 7, 2018 arrest for trespassing at the Eagle Inn in Jacksonville, Florida, in violation of Florida Statute section 810.09.[2] According to law enforcement officers, in attempting to make that arrest, the officers discovered a firearm tucked under Defendant's arm. Defendant now moves

---

[1] The Court notes that one of the actions Defendant discussed was interviewing a former Eagle Inn or Economy Inn housekeeper named Brenda Raymond, and her husband, Dennis Meredith. The record reflects that regardless of whether the investigator spoke to these people, Defendant, who has been aware of them and of any potential knowledge they may have, never requested a subpoena for either of them. Notably, Defendant was aware that the two lived in Room 148 at the Eagle Inn. Also, to the extent Defendant believed he needed additional information to locate the two, he failed to ask any questions of Mr. Patel about them or their whereabouts when he questioned Mr. Patel on November 20, 2018, so that they could be subpoenaed for the completion of the hearing on November 29, 2018.

[2] Defendant was originally charged in state court with trespass and possession of a firearm, as well as a number of other offenses. See State v. Hameen, Case No. 16-2018-CF-001289-AXXX-MA (Fla. 4th Cir. Ct.). The state charges were nolle prossed on July 23, 2018, after the instant case was filed. Id.

to suppress the evidence seized during his arrest, arguing inter alia that the officers lacked probable cause for the arrest. See Motion at 2-3.

At the evidentiary hearing, the Government presented the testimony of the following witnesses: Jacksonville Sheriff's Office (JSO) Officer Rodney Driggers; JSO Sergeant Darron Scott; JSO Detective Morel Sepulveda; JSO Officer Anastasia Scott; and Mr. Snehal Patel, who is an owner of the Eagle Inn. The government admitted into evidence two photographs of the exterior of the Eagle Inn (Doc. 170; Gov't Ex. 1 & 2) and two photographs of an Eagle Inn Registration Card (Doc. 170; Gov't Ex. 3A & 3B).[3] Defendant presented the testimony of Mr. Jaukeem Pickens and Mr. Ronnie Reed, who were at the Eagle Inn on February 7, 2018. Defendant also presented additional testimony from Officer Scott, Officer Driggers, Detective Sepulveda, and Mr. Patel. Defendant admitted into evidence the following exhibits: a narrative of relevant police radio calls from February 7, 2018 (Doc. 169-1; Def. Ex. 1); a narrative of relevant MDC messages from February 7, 2018 (Doc. 169-1; Def. Ex. 3, 4, 8); photographs of the exterior of the Eagle Inn (Doc. 169-1 & Doc. 186-1; Def. Ex. 5-7, 9, 10); a recording of a July 24, 2018 interview of Defendant conducted during his transport from state to federal custody (Doc. 186-1; Def. Ex. 11); an affidavit relating to the initiation of Defendant's state court case (Doc. 186-1; Def. Ex. 13); and two copies of the arrest and booking report from the state court case, one bearing the additional handwritten signature of Detective Sepulveda (Doc. 186-1; Def. Ex. 14 & 15).

---

[3] To the extent Defendant objected to Gov't Ex. 1 and 2, any objection would be overruled. Officer Driggers testified that the photographs depicted what the area looked like on February 7, 2018, and Defendant presented no evidence to the contrary. Indeed, his own witnesses testified using the same photographs with no indication that the photographs failed to fairly and accurately represent the area as it appeared on February 7, 2018. Thus, Gov't Ex. 1 and 2 were properly admitted.

## II. Burden of Proof

Upon a motion to suppress evidence obtained through a warrantless search and seizure, the Government bears the burden of proving by a preponderance of the evidence "that the challenged action falls within one of the recognized exceptions to the warrant requirement . . . ." United States v. Freire, 710 F.2d 1515, 1519 (11th Cir. 1983) (emphasis and citation omitted). See also United States v. Matlock, 415 U.S. 164, 177 n.14 (1974) (stating that "the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence").

## III. Findings of Fact

The Court makes the following findings of fact, which include credibility determinations made after considering all of the evidence and listening to and observing the witnesses as they testified.

Shortly after 1:30 a.m. on the morning of February 7, 2018, Detective Morel Sepulveda, Officer Rodney Driggers, and Officer Anastasia Scott (collectively, the Officers) were driving marked JSO patrol vehicles northbound on Phillips Highway in Jacksonville, Florida, on their way to another call for service. See Nov. 20 Tr. at 30-34, 209-10, 294-95. Detective Sepulveda and Officer Driggers were riding together in one car, and Officer Scott was alone in another car. Id. at 32, 35, 210, 295. As the Officers approached the Eagle Inn at 3155 Phillips Highway, they observed Mr. Patel, whom they knew to be an owner of the Eagle Inn, standing in the front area of the Eagle Inn. Id. at 33-34, 210-11, 295. The property belonging to the Eagle Inn extends forward from the building to where the grass in front of the building reaches the sidewalk. Id. at 247-48. Mr. Patel, who was having an altercation with Defendant, was waiving the Officers down

with what appeared to be a black, bat-like stick or baton in his hand, so the Officers pulled into the driveway of the Eagle Inn. Id. at 34-35, 43-44, 211, 257-58, 295.

When the Officers pulled into the driveway, Mr. Patel was standing on a raised ledge just outside of the front office area of the Eagle Inn. Id. at 35-36, 38-39, 213-15, 256-57, 297. Defendant was standing approximately a couple feet away from Mr. Patel on the Eagle Inn property. Id. The Eagle Inn property has "No Trespassing" and "No Loitering" signs posted throughout, including in the front area near where Defendant was standing. Id. at 40, 249. Defendant and Mr. Patel were engaged in a heated argument. Id. at 44, 230. Officer Driggers described Defendant as argumentative, agitated, and aggressive.[4] Id. 43-44.

When they exited their patrol cars, Officer Driggers and Detective Sepulveda observed Mr. Patel repeatedly ordering Defendant to leave the Eagle Inn property. Id. at 41, 43, 218. They also observed Defendant refusing to leave the Eagle Inn property, saying that he did not have to leave because he was waiting for a ride. Id. at 43, 219. Mr. Patel told the Officers that Defendant needed to leave the property. Id. at 259, 297. Based on the location of Defendant and Mr. Patel's warnings, Officer Driggers and Detective Sepulveda informed Defendant that he was trespassing and that he needed to leave the property. Id. at 44-45, 219-20, 259-60, 298. Defendant again refused to leave the property, repeating that he did not need to leave and that he was waiting for a ride. Id. at 45-46, 219, 298. Believing he had probable cause for an arrest on the charge of trespass, Officer Driggers then attempted to take Defendant into custody. Id. at 46. In doing so, Officer Driggers approached Defendant to pat him down in anticipation of

---

[4] Officer Driggers further testified that Defendant appeared to be substance-impaired, based on the smell of alcohol, his slurred speech, and his unsteady stance. Id. at 44.

arresting him. Id. at 46, 220, 298. When Officer Driggers reached for Defendant's arm, Defendant pulled away and avoided the contact. Id. at 46, 220. Officer Driggers then grabbed hold of Defendant, at which time he felt what he recognized to be a firearm tucked under Defendant's arm, beneath his coat. Id. at 46-47, 220. Officer Driggers immediately told Detective Sepulveda that Defendant had a firearm and they "escorted" Defendant to the ground. Id. at 47, 220, 298. At this point, the gun fell out from under Defendant's arm onto the ground. Id.

Defendant was not compliant during the arrest, and the Officers had to use a minimal amount of force to get Defendant into handcuffs. Id. at 47-48. He was verbally noncompliant and aggressive. Id. The whole interaction between the Officers seeing Mr. Patel and Defendant on the Eagle Inn property and the arrest was at most a few minutes long. Id. at 73, 301. At no point during the interaction did Defendant attempt to leave the Eagle Inn property. Id. at 50.

Ronnie Reed, testifying on behalf of Defendant, presented a slightly different version of events.[5] Mr. Reed testified that he was on his way to the front office to pay his hotel fee when he encountered Defendant just before the arrest happened. Id. at 140, 166. He also testified that he was standing by the front office, Mr. Patel was standing just beside him on the raised ledge outside the front office, and Defendant was standing on the left-hand side of the Eagle Inn driveway, just before the driveway reaches the sidewalk, a position still on the property of the Eagle Inn. Id. at 138-39, 144, 151, 153, 166. On

---

[5] As noted above, Defendant also presented the testimony of Mr. Jaukeem Pickens. However, Mr. Pickens testified that he did not see or hear Defendant's arrest. Id. at 84, 89-90. Thus, he had no relevant testimony to offer regarding the arrest. Notably, Mr. Pickens did testify that he had invited Defendant to his room at the Eagle Inn the night of the arrest to assist him in a legal matter. Id. at 81. However, Mr. Patel testified that no visitors were allowed at the Eagle Inn at any time, and that hotel guests were notified of this rule upon check-in via a registration card that lists the hotel rules. Id. at 249-51. See also Gov't Ex. 3A, 3B.

cross examination, Mr. Reed testified that Defendant appeared to be leaving the property, walking toward the road. Id. at 167. According to Mr. Reed, he and Defendant spoke for about five or ten seconds before Mr. Patel approached them, id. at 168, and the police pulled in the driveway about one minute after that, id. at 170. Mr. Reed testified that Defendant stepped a little closer to the front office when the Officers pulled in the driveway to avoid their patrol cars. Id. at 141. However, at other times, in pointing to a photograph in evidence, Mr. Reed showed Defendant to be closer to the front office at the time of the altercation. Id. at 173-75.

Mr. Reed could not recall whether Mr. Patel flagged down the police. Id. at 142, 170. According to Mr. Reed, the Officers were initially concerned with him, not Defendant. Id. at 142, 190, 201. Mr. Reed testified that he did not hear Mr. Patel speak with the Officers or the Officers telling Defendant to leave the property, he only heard one of the Officers yelling "gun, gun," at which point he immediately left the area. Id. at 145-46, 190. Initially, Mr. Reed testified that he did not remember any altercation between Defendant and Mr. Patel. Id. at 138, 143-45. However, Mr. Reed testified on cross examination that Defendant and Mr. Patel appeared to be having some type of argument. Id. at 173.

To the extent Mr. Reed's version of events conflicts with that of the Officers' and Mr. Patel's, the Court rejects it. The Court finds the government's witnesses credible based on their demeanor and the consistency of their testimony. Indeed, the testimony of the Officers was consistent with one another and with that of Mr. Patel, who confirmed that he ordered Defendant to leave the property, told the Officers that Defendant needed to leave, the Officers ordered Defendant to leave, Defendant argued with them, and then

Mr. Patel heard one of the Officers saying, "gun, gun, gun." Id. at 259-60. The Court also notes that Mr. Reed contradicted himself—for example, testifying that Mr. Patel was trying to tell Defendant to leave the property but later retreating from that statement, and testifying that he, Mr. Reed, did not tell Mr. Hameen to leave but then admitting he may have done so when the Officers arrived. Id. at 173, 195-96. Additionally, Mr. Reed, who has a number of felony convictions, id. 186-87, exhibited significant animosity toward one of the arresting officers. Id. 177-86. His testimony as a whole was unconvincing. Notably, even Mr. Reed's testimony placed Defendant on the property of the Eagle Inn at the time the Officers arrived, and Defendant presented no other witnesses or evidence regarding the events leading up to his arrest.[6] As such, the Court accepts the account of the events presented by the Officers and Mr. Patel.

## IV. Standards

### A. Probable Cause for Arrest

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Searches and seizures conducted without a warrant are presumptively unreasonable, subject to some exceptions. See Minnesota v. Dickerson, 508 U.S. 366, 372 (1993). As relevant here, for example, "the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." Michigan v. DeFillippo, 443 U.S. 31, (1979). "'Probable cause to arrest exists when law enforcement officials have facts and

---

[6] Defendant argued the recording of a July 24, 2018 interview with Defendant would show that Detective Derek A. Pratico believed Defendant was not on the Eagle Inn property at the time of his arrest. A review of the recording fails to support this contention. See Def. Ex. 11. At most, it reflects Detective Pratico repeating Defendant's contentions regarding the circumstances of his arrest.

circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime.'" United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002) (quoting United States v. Gonzalez, 969 F.2d 999, 1002 (11th Cir. 1992)). "Probable cause is not based on knowledge of legal technicalities, but rather on whether there is a reasonable ground to believe that a crime has been committed. There is no rule of law which requires an officer to know with absolute certainty that all elements of a putative crime have been completed when he seizes an article which reasonably appears to be incriminating evidence." United States v. Smith, 459 F.3d 1276, 1292 (11th Cir. 2006) (internal citations and quotation marks omitted).

Under federal law, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). Similarly, under Florida law, an arrest by an officer without a warrant is lawful when, among other things, "[t]he person has committed a felony or misdemeanor or violated a municipal or county ordinance in the presence of the officer." Fla. Stat. § 901.15 (emphasis added). See also Smith v. State, 778 So. 2d 329, 330 (Fla. 2d Dist. Ct. App. 2000) ("A law enforcement officer may not make a warrantless arrest for a misdemeanor, such as this trespass, unless every element of the crime is committed in his presence.") (citations omitted). Here, the government asserts that Defendant was initially arrested for the crime of trespass on property other than a structure or conveyance, in violation of Florida Statute section 810.09. This statute provides in relevant part:

> (1)(a) A person who, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance:

> 1. As to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation as described in s. 810.011 . . . commits the offense of trespass on property other than a structure or conveyance.

Fla. Stat. § 810.09 (emphasis added). Thus, the elements of trespass under Florida law are: "(1) the defendant willfully entered or remained on property; (2) other than a structure or conveyance; (3) without being authorized, licensed, or invited; (4) when notice against entering or remaining had been given to the defendant." K.M.B. v. State, 69 So. 3d 311, 314 (Fla. 4th Dist. Ct. App. 2011). Pursuant to section 810.09(1)(a)(1), notice may be accomplished through actual communication or through constructive notice by posting or fencing. See Fla. Stat. § 810.09(1)(a)(1). To achieve notice through actual communication, the trespasser must receive an oral warning. See C.B.S. v. State, 184 So. 3d 611, 614 (Fla. 1st Dist. Ct. App. 2016).

### B. Search Incident to Arrest

"When officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest, and to search the suspect in order to safeguard evidence and ensure their own safety." Virginia v. Moore, 553 U.S. 164, 178 (2008). Such a search "may only include the arrestee's person and the area within his immediate control . . . the area from within which he might gain possession of a weapon or destructible evidence." Arizona v. Gant, 556 U.S. 332, 339 (2009) (internal quotation marks omitted). Notably, the search may occur immediately before the arrest, as long as law enforcement officers have probable cause to arrest before conducting the search. See, e.g., Rawlings v. Kentucky, 448 U.S. 98, 111, (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of

petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."); United States v. Banshee, 91 F.3d 99, 102 (11th Cir. 1996) ("[B]ecause there was probable cause for the arrest before the search and the arrest immediately followed the challenged search, the fact that [defendant] was not under arrest at the time of the search does not render the search incident to arrest doctrine inapplicable."); United States v. Safeeullah, 453 F. App'x 944, 946 (11th Cir. 2012) ("[T]he ATF agents had probable cause to arrest Safeeullah before any search began . . . . Thus, any search was a lawful search incident to arrest.").

## V. Analysis

### A. Probable Cause for Arrest

Based on the testimony presented at the evidentiary hearing, the facts known to the Officers at the time of Defendant's arrest allowed them to reasonably conclude that Defendant was trespassing at the Eagle Inn on February 7, 2018. In short, the testimony established that the Officers witnessed Defendant violate all four elements of Florida's trespass statute. Indeed, the Officers observed Defendant (1) willfully remaining on the Eagle Inn property; (2) which was not a structure or conveyance; (3) without being authorized, licensed, or invited; (4) when notice against remaining had been given to Defendant by both Mr. Patel and the Officers.

Despite this evidence, Defendant has raised a number of arguments in support of suppression, both in his Motion and orally at the conclusion of the suppression hearing. The Court will address them in turn.

First, in the Motion and at the hearing, Defendant made several arguments based upon his contention that he actually was not on Eagle Inn property when he was arrested.

For example, in his Motion, Defendant argued that he was standing on an "unenclosed area near the hotel's entrance." Motion at 2. Similarly, at the hearing, Defendant maintained that he was standing on the sidewalk, which is an easement and therefore not Eagle Inn property. Defendant additionally argued that he was not on Eagle Inn property when the Officers arrived, but that the Officers caused him to move off the sidewalk and on to Eagle Inn property when they pulled into the driveway. Defendant alternatively suggested that he was standing on property not within the exclusive control of the Eagle Inn, but rather on property shared with a restaurant adjacent to the Eagle Inn. Finally, Defendant asserted that he left the Eagle Inn after being instructed to do so and never attempted to re-enter the area.

While Defendant presents these arguments passionately, there is simply no evidence to support them. Not a single witness provided testimony that would support a finding that Defendant was not physically on the Eagle Inn property. Instead, the uncontroverted evidence adduced at the suppression hearing established that Defendant was standing on Eagle Inn property when Mr. Patel ordered him to leave, when the Officers first arrived, and at the time of his arrest. Indeed, the Officers and Mr. Patel testified that Defendant was standing near the front office when they arrived, and not on the sidewalk. Even Defendant's own witness, Mr. Reed, placed Defendant in the driveway of the Eagle Inn, and not on the sidewalk. No witness testified that Defendant was actually at the adjacent restaurant at the time of the incident, or that Defendant was standing on property controlled by the restaurant. Rather, the undisputed testimony shows that Defendant was standing on property controlled by the Eagle Inn. Finally, the evidence established that

after Defendant was instructed to leave the Eagle Inn, he <u>remained</u> on the property. Thus, whether he attempted to re-enter is beside the point.

In his Motion, Defendant relies on <u>B.W. v. State</u>, 973 So. 2d 657 (Fla. 3d Dist. Ct. App. 2008), to support his argument that he was not standing on Eagle Inn property. See Motion at 3. However, <u>B.W.</u> is easily distinguishable, as the defendant in <u>B.W.</u> was convicted of trespass <u>in a structure</u> in violation of Florida Statute section 810.08 "as a result of her repeated failure to leave an open, unfenced stairway leading from the walkway to the front porch and entrance doors of the Unity Health and Rehabilitation Center in Miami–Dade County." <u>Id.</u> at 657-58. Florida's Third District Court of Appeal reversed the defendant's conviction, holding that "the stairway, which was plainly not within the 'structure' itself, was also, contrary to the trial court's belief, not within its 'curtilage,' so as to justify such a conviction." <u>Id.</u> at 658. In doing so, the court cited to <u>Freeman v. State</u>, 743 So. 2d 603 (Fla. 4th Dist. Ct. App. 1999) and <u>L.K.B. v. State</u>, 677 So. 2d 925 (Fla. 5th Dist. Ct. App. 1996), both of which involved reversals of convictions for trespass in a structure in violation of section 810.08, because the defendants were in a yard and a parking lot, respectively, rather than in a structure. <u>Id.</u> These cases, like <u>B.W.</u>, are inapplicable to the instant case, as Defendant was arrested for trespass on property <u>other than in a structure</u> in violation of section 810.09, not section 810.08.

In an apparent concession that he was actually on Eagle Inn property when the Officers arrived, Defendant argued at the hearing that he was trying to leave the property, saying "I'll be on my way," but the Officers prohibited him from doing so. Defendant asserted that Officer Driggers had acknowledged as much during the suppression hearing. However, Officer Driggers did not testify that he observed Defendant attempting to leave

the property.[7]  Instead, Officer Driggers testified that at no point during the interaction did Defendant attempt to leave the Eagle Inn property.  Nov. 20 Tr. at 50.  Officer Driggers also testified that if Defendant had attempted to leave, he would have been permitted to do so, and that the reason for the Officers' initial interaction with Defendant was "[t]o dissolve the argument and allow [Defendant] to leave the property peacefully."  Id.

Defendant also appeared to argue in his Motion that he did not receive notice that he was trespassing, as required by Florida law.[8]  See Motion at 2 ("Defendant has never been trespassed by Snehal Patel . . . .  Florida trespass statute requires that notice be given . . . .").  In addition, Defendant states that the Officers failed to give him a "trespassing warning (citation)," which, according to Defendant, "is a prerequisite to the crime of trespassing."  Id. at 4.  These arguments fail for two reasons.  First, the evidence at the suppression hearing established that both the Officers and Mr. Patel ordered Defendant to leave the property.[9]  Second, Defendant cites no authority for the proposition that law enforcement officers must provide an individual with some sort of

---

[7] Specifically, at the close of the second day of the evidentiary hearing, Defendant argued:
> Officer Driggers, he also states that he recalls something to the effect when I -- I said: Do you recall me saying I'm a noncombatant peaceful inhabitant of the land and <u>I will be leaving now</u>? And he said that: Sounds about right.  So my problem is, ma'am, is, with his testimony, and I attempted to leave, but I -- I wasn't allowed.

Nov. 29 Tr. at 204 (emphasis added).  In making this argument, Defendant appears to be relying on an exchange that took place between Defendant and Officer Driggers on the first day of the evidentiary hearing.  In that exchange, what Defendant actually said was the following:
> [Defendant]:  Do you recall me telling you that I was a noncombatant and peaceful inhabitant of the land and <u>that I was waiting on my ride</u>?
> [Officer Driggers]:  That sounds vaguely familiar.

Nov. 20 Tr. at 66 (emphasis added).  Thus, Officer Driggers's testimony does not support Defendant's assertion that he was "on his way" or otherwise trying to leave the property.

[8] Confusingly, Defendant later appears to recognize that Mr. Patel told him to leave the property. See id. at 3 ("He had complied with the hotel managers [sic] request to leave the hotel . . . .").

[9] The Court also notes that Mr. Patel testified that the Eagle Inn has "a blanket trespassing form signed with JSO."  Nov. 20 Tr. at 278.  Specifically, Mr. Patel testified that because of this blanket trespassing form, "we don't need to tell them.  If they have to they have to, they can do whatever -- if they feel that they need to trespass somebody, they can do it."  Id.

- 14 -

written trespass citation, in addition to a verbal trespass warning such as the one given here, before making an arrest for trespass.

Additionally, at the hearing, Defendant maintained that the Officers did not have probable cause to arrest him because they detained him within 13 seconds of their initial encounter. In doing so, Defendant relied on Def. Ex. 1, a narrative of relevant radio calls made by the Officers on February 7, 2018, which was created by Detective Derek A. Pratico, a JSO officer cross sworn with ATF, and produced by the Government in response to Defendant's discovery requests. See Def. Ex. 1 at 1; Nov. 20 Tr. at 56-58.

According to Defendant, the radio transmission from G163 (Detective Sepulveda) to dispatch at 01:36:36 shows when the Officers initially stopped at the Eagle Inn, and the radio transmission from G163 at 01:36:49 shows when the Officers detained him. The time between the two transmissions was 13 seconds. Defendant essentially argues that the encounter could not have occurred as described by the Officers, because the Officers could not have known that Defendant was trespassing after having had only a 13-second-long interaction with Defendant. Contrary to Defendant's argument, however, the radio calls do not establish exactly when the Officers first encountered Defendant. Moreover, Officer Driggers and Officer Scott testified that the whole interaction, from the Officers seeing Mr. Patel and Defendant on the Eagle Inn property to the arrest, happened quickly and lasted, at most, a few minutes. Id. at 73, 301. The brief period between the radio calls is not inconsistent with this testimony. Nor is it inconsistent with the Officers' description of their quickly evolving interaction with Defendant in which upon exiting their vehicle after observing the altercation between Defendant and Mr. Patel, the Officers hearing Mr. Patel ordering Defendant to leave, to no avail, the Officers themselves

repeating the directive, Defendant refusing to leave, and the Officers determining that Defendant was trespassing and attempting to arrest him for that. Thus, Defendant's reliance on the radio call narrative fails to undermine the consistent testimony of four witnesses supporting the conclusion that at the time the Officers seized Defendant, they had probable cause to believe he was committing the offense of trespass on the property of the Eagle Inn.

Defendant also argued that he was not trespassing based upon the alleged insufficiency and location of the "No Trespassing" signs posted on the property. Defendant seemed to contend that the postings failed to satisfy the requirements of Florida Statute section 810.011(5). He further argued that the location of the "No Trespassing" signs—near the front office—demarcated the boundary of the Eagle Inn property and because he was beyond those signs, he was not trespassing. Both arguments are unavailing. Florida Statute section 810.09 requires, as an element of the offense, proof that notice against entering or remaining on the property was given to the offender. However, the notice required by section 810.09 can be accomplished through constructive notice by posting or fencing, as defined by section 810.011, <u>or</u> through actual communication. Here, the evidence establishes that Defendant received actual notice, through oral communication from Mr. Patel and the Officers, against remaining on the Eagle Inn property. As such, it is irrelevant whether the property was properly posted pursuant to section 810.011 such that he could have received proper constructive notice.[10]

---

[10] At the hearing, Defendant relied on <u>C.B.S.</u> and <u>Baker v. State</u>, 813 So. 2d 1044 (Fla. 4th Dist. Ct. App. 2002) to argue that he did not receive sufficient notice. However, both are distinguishable as the defendants in those cases had not received actual <u>or</u> constructive notice. Here, there is no dispute that Defendant received actual notice that he was not allowed on the property.

To the extent Defendant asserted that the location of the "No Trespassing" signs demarcated the legal boundaries of the property, he has cited no authority for his contention. Mr. Patel testified to the location of the property line, and despite Defendant being beyond the "No Trespassing" signs, the evidence established that Defendant was well within that property line. Alternatively, if Defendant's argument is that because Florida Statute section 810.011(5) requires "No Trespassing" signs to be placed along the boundary line he could not be arrested for trespassing when he was beyond the signs, he is mistaken. As explained above, the notice against remaining on the property required by section 810.09 can be accomplished by posting or through actual communication. Because Defendant received actual notice that he was not allowed to remain in that area, the placement of the "No Trespassing" signs is irrelevant to the issue of probable cause. In addition, to the extent Defendant suggests that Mr. Patel and the Officers were mistaken about the property lines of the Eagle Inn, the Court would still conclude that the Officers reasonably believed that Defendant was trespassing based on their interaction with Mr. Patel and their knowledge of him as an owner of the Eagle Inn. As stated above, "probable cause is not based on knowledge of legal technicalities, but rather on whether there is a reasonable ground to believe that a crime has been committed." Smith, 459 F.3d at 1292.

Having heard all of the evidence and considered Defendant's arguments, the Court determines that when Officer Driggers seized Defendant, the Officers had probable cause to believe Defendant was trespassing on the property of the Eagle Inn. More specifically, the Court concludes that the Officers had probable cause to arrest Defendant for the offense of trespass in violation of Florida Statute section 810.09.

### B. Search Incident to Arrest

Because the Officers had probable cause to arrest Defendant, the search incident to the arrest was also lawful. Moreover, because the search and arrest occurred in close temporal proximity, the search was authorized under the search-incident-to-arrest exception to the warrant requirement even though Defendant was not actually placed under arrest until after the search occurred. See Rawlings, 448 U.S. at 111; Banshee, 91 F.3d at 102; Safeeullah, 453 F. App'x at 946; U.S. v. Powell, 483 F.3d 836, 838-842 (D.C. Cir. 2007).

### VI. Conclusion

Based on the totality of circumstances in this case, the Court finds that the government has met its burden of proving by a preponderance of the evidence that the Officers had probable cause to arrest Defendant. Having made a lawful arrest, the search performed incident to the arrest was also lawful and the evidence seized is admissible.

Accordingly it is

**ORDERED:**

1. Defendant's Legal Notice and Demand for the Suppression, Voiding and or Exclusion of All Physical Written and Recorded Evidence the Prosecution Plans to Use Against 'Affiant' at Trial (Doc. 123) is **DENIED**.

2. The Courtroom Deputy Clerk is directed to provide a copy of this Order to Defendant at 1:30 p.m. on Tuesday, December 4, 2018.

**DONE AND ORDERED** in Jacksonville, Florida on December 4, 2018.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

Lc23

Copies to:

Defendant
Counsel of Record